IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| ALVIN ANDREW KELLY, | § | |
| Petitioner, | § | |
| vs. | § | No. 1:00cv636 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | | |

**MEMORANDUM OPINION**

     This matter comes before the Court on remand from the United States Court of Appeals for the Fifth Circuit. That court ordered this Court to conduct an evidentiary hearing to determine whether Cynthia May Kelly Cummings ("Cummings"), a witness at the petitioner Alvin Kelly's ("Kelly's") capital murder trial, later recanted her testimony in a private conversation with Kelly's sister, Nancy Brown. The Court, having conducted the hearing, finds for the reasons set forth below that she did not.

**Facts**

     Petitioner Alvin Andrew Kelly ("Kelly") was convicted of killing Devin Morgan, a twenty-two month old child, and sentenced to death. The main witness against Kelly was Cummings, his former wife. At the trial, which took place in 1991, Cummings testified that in

April of 1984, she accompanied Kelly and one Ronald Wilson to a trailer where Jerry Morgan, his wife Brenda Morgan and their son, Devin Morgan, lived. The visit was related to Kelly's drug-dealing. Cummings initially stayed in the car, but after hearing gunfire she entered the trailer and saw that Jerry Morgan had been shot. As she saw Kelly struggling with Brenda Morgan, Cummings picked up the child; Kelly shot Brenda Morgan, then took the child from Cummings and shot him in the head.

**Procedural History**

In his application for a writ of *habeas corpus*, Kelly claimed, *inter alia*, that his conviction was secured through the knowing use of perjured testimony, and that the prosecution failed to disclose that it had secured Cummings's testimony by threatening her. Kelly produced an affidavit from Nancy Brown,[1] in which she stated that, in 1998, Cummings recanted her trial testimony, saying that "Alvin did not kill that baby," and words to the effect that the law was involved in the killing and that she had been coerced to testify against Kelly by threats from law enforcement. In a later deposition, Cummings denied making those statements to Nancy Brown. The Director moved for summary judgment on both claims.

Under Fed.R.Civ.P. 56, summary judgment is appropriate when there are no material issues of fact and one party is entitled to judgment as a matter of law. In the present case, the Court found that two separate issues of fact existed: whether Cummings actually did recant her trial testimony in her conversation with Nancy Brown, and whether her recantation, if made, was credible. Because recantations are viewed with extreme suspicion, see *United States v.*

---

[1] Nancy Brown is Kelly's biological sister, although they were raised by different families and first met as adults.

*Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991), *cert. denied*, 502 U.S. 1112 (1992), this Court has held that, absent persuasive corroborating evidence, a recantation is not grounds for granting relief in *habeas corpus*. *See e.g. Summers v. Cockrell*, No. 6:01cv139, slip op. p.13 ( EDTX March 4, 2004). This Court accordingly ordered Kelly to provide any evidence that would corroborate the statements Cummings allegedly made to Nancy Brown in her recantation - that is, any evidence that would support the proposition that Kelly did not kill the child, that the law was involved with the murder, or that Cummings' testimony had been coerced by threats from law enforcement. Absent such evidence, even if Cummings actually did recant her trial testimony to Nancy Brown, her recantation would not be grounds for relief in *habeas corpus*. The Court reasoned that unless Cummings' alleged recantation were corroborated, the issue of whether she recanted her testimony would be immaterial for purposes of summary judgment.

On October 28, 2004, Kelly responded by filing a memorandum of corroborating materials, claiming that Cummings' alleged recantation was corroborated in nine instances. This Court carefully examined the materials submitted by Kelly, however, and determined that they did not corroborate the statements in Cummings' alleged recantation. The Court found that because Cummings' alleged recantation was uncorroborated, it could not be grounds for relief in *habeas corpus*, regardless of whether the Court believed she actually made the statements Nancy Brown alleged she made. The Court therefore found that the question of whether Cummings did or did not recant her testimony in her conversation with Nancy Brown was immaterial, and it granted the Director's motion for summary judgment.

Kelly appealed, and the United States Court of Appeals reversed, relying on the mandate rule. While admitting that this Court provided strong reasons for its decision and that its analysis

3

would normally withstand scrutiny, the Court of Appeals found that because it had previously determined that fact issues existed, this Court was obligated to resolve those fact issues. *See Kelly v. Dretke*, No. 05-7005 ( 5th Cir. April 20, 2006).

This Court accordingly held an evidentiary hearing to resolve whether Cummings recanted her trial testimony in her conversation with Nancy Brown. Cummings, Nancy Brown, her husband Conley Brown, Kelly, and Harold Potts, an inspector from the Longview police department, testified at the hearing, and the Court admitted the deposition testimony of Cummings' sister, Beverly Frank.

**Testimony presented at the Evidentiary Hearing**

*Nancy Brown*

Nancy Brown testified that one morning while she was praying about Kelly's case, she asked the Lord to show her what had really happened and she had an impression in her heart from God that if she would find Cummings that Cummings would throw herself in Nancy Brown's arms, and then " bare her heart to me, and it would be more than what was on the paper," including why Cummings was afraid, and why she had been telling people she had been threatened.

Sometime later, while visiting Kelly on death row, Nancy Brown met an attorney named Tom Sullivan. Sullivan asked Nancy Brown whether she knew anything that she could do to help Kelly, to which Nancy Brown answered that she had something in mind. Informed by Sullivan that Kelly needed help quickly, Nancy Brown obtained Cummings' address from another of Kelly's attorneys, Mark Breding, and with her husband, drove to Cummings' house in Georgia, where they arrived unannounced. Nancy Brown testified that when they met,

Cummings fell into her arms and they both began to cry.

Nancy Brown, Conley Brown, Cummings and her son Alvin Jr. then engaged in a conversation which lasted several hours, discussing, *inter alia,* Cummings recent religious conversion, and what had happened, in general, in their lives.  After the first two hours Cynthia's husband, Lloyd Cummings, arrived, and he, Conley Brown, and Alvin Jr. went outside to talk.  At this point, as Nancy Brown had envisioned, Cummings, unprompted, suddenly said to her, "This is between you, me and God.  Alvin did not kill that baby."  Cummings also said words to the effect that the police were involved in the killing, although she did not specify how they were involved, that a lot of people were at the trailer, and finally, that her life and the life of her son had been threatened if she did not testify against Kelly.

Nancy Brown testified that she wanted Cummings to know that she felt very bad upon hearing that Cummings and Alvin Jr. had been threatened and were hiding for their lives, and that she and her husband wanted Cummings to know that God would help her and that they would also help her and that she did not need to hide out anymore.  According to Nancy Brown, Cummings was very comfortable with this information and the rest of the visit and the conversation was comfortable.

Nancy Brown testified that after an exchange of a few friendly letters, she began to ask Cummings to please come forward, that if she did, there would be protection provided for her and her son, that if they did come forward they could stay at the Brown's farm house and Nancy Brown and Conley Brown would not allow anything to happen to them.  Nancy Brown testified that she said to Cummings that  "We are all at risk" and that she had been told by several other people that their lives had been threatened as they were involved in this case.  Nancy Brown

testified that because several other people told her that their lives had been threatened, it gave her a reason to believe that Cummings was telling the truth in her recantation. Nancy Brown said that when Cummings refused to come forward, she told Cummings that she was very disappointed that Cummings would allow Alvin to be executed for something that Cummings knew in her heart didn't happen.

*Cynthia Cummings*

Cummings confirmed that the visit with Nancy Brown and Conley Brown took place but denied making any statements to the effect that Kelly did not shoot the child, that she had been threatened, that law enforcement was involved with the killing of the child, that there were several people at the trailer at the time the Morgans were murdered, or that she was afraid of law enforcement. Cummings also testified that she had not been threatened by law enforcement and was not afraid of law enforcement; rather, at the time she met with Nancy and Conley Brown, it was Kelly's associates and friends that she feared. Cummings admitted to using drugs heavily in her past, and denied that she ever told anyone that she took part in the killing of the Morgan family.

*Conley Brown*

Conley Brown testified that after talking with Kelly and looking at Cummings' character, he and Nancy Brown became convinced that Cummings had testified falsely at Kelly's trial. After a lawyer at the prison told them to do whatever they could, that they should visit with Cummings and that they had nothing to lose by doing so, Nancy Brown offered to tape-record the conversation, but when the lawyer didn't comment, they dropped the idea. Conley Brown corroborated Nancy Brown's testimony that Cummings said that the law was heavily involved in

the Morgan case, that she was afraid, and that she hated Texas. Conley Brown also testified that after the meeting, both he and Nancy Brown asked Cummings to come forward with the truth, and offered to bring her to Texas so that she could have some protection, but Cummings refused to go further with it.

*Russell Potts*

Investigator Potts testified that he met with Cummings after receiving information from another law enforcement officer that Cummings had information about the Morgan murders. He encouraged her to testify and said that she was willing to do so but was afraid of retaliation from Kelly. Potts testified that he has never at any time threatened Cummings, and that, to his knowledge, neither has anyone else associated with law enforcement.

*Beverly Frank*

Beverly Frank ("Frank") testified that she had previously signed an affidavit in which she stated that Cummings had said to her that she had killed Jerry Morgan, the child's father, and had helped kill John Ford, a man whom Kelly pled guilty to murdering in a different incident. Frank testified that Cummings said that she killed Morgan simply to scare Frank while they were arguing over Cummings' using drugs. Frank testified that she initially believed Cummings, but later decided that Cummings had not been truthful. Frank also testified that Cummings made the statements about helping to kill John Ford while describing a nightmare, and that she did not believe that Cummings was describing actual events.

*Alvin Kelly*

Kelly testified that he was not involved in the Morgan murders, and that he was with an individual named Johnny Waller, changing a truck engine, on the night they occurred. Kelly

7

admitted being a drug dealer, but testified that, due to his reputation, he never actually had to resort to violence to collect money from his customers. He testified that he was involved in the murder of John Ford, explaining that Cummings shot Ford and then he took the gun away from her because he was afraid she would shoot him as well, and that after taking the gun away from her he fired the remaining rounds into Ford's body, which made him as guilty as Cummings. He testified that because he was guilty of murder in the Ford case, he pleaded guilty. Kelly denied that he would lie in Court to save his own life, explaining that he was offered a life sentence in this case, but turned it down because he was not guilty.

**Analysis**

To resolve the credibility question in this case, the Court first considers why Cummings refused to "come forward" and publicly recant her testimony that Kelly killed the Morgan infant, after being asked to do so by Nancy Brown and Conley Brown. According to their testimony, it was because Cummings has been threatened by law enforcement. Nancy Brown testified that she believed Cummings had been threatened because she (Nancy Brown) " had been told by several people that their lives had been threatened as they were involved in the case." Nancy Brown did not divulge the names of any of these individuals, however, and Kelly provided no evidence to corroborate her statement.

The other reason Cummings would refuse to publicly recant her trial testimony was that she did not, in fact, testify falsely at Kelly's trial. The Court has previously determined that none of the evidence produced by Kelly during these proceedings corroborated the statements in the Cummings' alleged recantation; which is another way of saying that none of the evidence established that Cummings' trial testimony was false. Based upon the lack of evidence

8

supporting the explanation that Cummings was threatened, and the lack of evidence contradicting the explanation that Cummings testified truthfully, the Court finds that the more credible of the two explanations for Cummings' refusal to publicly recant her trial testimony is that she testified truthfully at Kelly's trial.

Even though the Court finds that Cummings did testify truthfully at Kelly's trial, it must consider whether she might nevertheless have recanted her truthful trial testimony in her private conversation with Nancy Brown. That this strange circumstance could have happened is supported by the testimony of Cummings' sister Beverly Frank, who testified that Cummings told her that she had killed Jerry Morgan, the infant's father, even though Frank testified that she believed Cummings was lying and only wanted to scare her. The Court presumes that in the absence of some clearly defined motive, such as duress, reward, or trying to scare someone, a person would not recant truthful trial testimony, and it notes that there is no evidence of any such motive during Cummings' meeting with Nancy and Conley Brown. Accordingly, the Court finds it unlikely that Cummings recanted her truthful trial testimony in her private conversation with Nancy Brown.

The Court notes that the credibility (or lack thereof) of the witnesses who testified was not obvious from either their statements or their demeanor. The Court therefore considered the testimony in light of the entire record, which supported Cummings slightly more than Nancy Brown. In addition, the similarity between Nancy Brown's testimony of her encounter with Cummings and her testimony about the vision she experienced while praying for Kelly suggests to the Court that Nancy Brown's memory of Cummings' recantation arose from that vision, rather than from reality. Finally, the Court noted a discrepancy between Nancy Brown's and

Conley Brown's testimony: Conley Brown testified that Cummings made some of the same statements to him and his wife together that Nancy Brown testified Cummings made to her only in private, while Conley Brown was out of the house.[2]

**Conclusion**

The Court finds by a preponderance of the evidence that Cynthia Cummings did not recant her trial testimony in her conversations with Nancy Brown and/or Conley Brown. Specifically, the Court finds that Cummings did not say that Kelly did not kill the Morgan infant; did not say that law enforcement was involved in the murder, and did not say that the reason she testified against Kelly at his trial was because she had been threatened by law enforcement with harm, to herself and to her child Alvin Jr., if she refused to do so.

Having resolved the fact issues which the United States Court of Appeals for the Fifth Circuit directed this Court to resolve in the remand, the Court will deny the remaining two claims in Kelly's application for a writ of *habeas corpus*.[3] A judgment in favor of the Director will be entered.

**SIGNED** this the **15** day of **February, 2007.**

_____
Thad Heartfield
United States District Judge

---

[2] Although not material to the credibility determination, the Court notes that the statements that both Nancy Brown and Conley Brown testified hearing Cummings make were so general and ambiguous that it is not clear that they are even exculpatory. For example, Cummings' alleged statement that she was afraid and believed that people who asked questions could be hurt, could have been based upon her fear of Kelly's friends and associates, rather than fear of law enforcement. Similarly, her alleged statement that "the law was involved" in the Morgan case could have been referring to legitimate activity, as opposed to nefarious activity.

[3] The Director also contended that these two claims have been procedurally defaulted. The Court previously determined that these claims met the "fundamental miscarriage of justice" exception to the procedural default bar, see docket entry # 10, Memorandum Opinion and Order of May 18, 2001, p. 4., and declines to revisit that issue.